IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN PRICE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-541 |
| HOWARD COUNTY PUBLIC SCHOOL SYSTEM, et al., | * | |
| | * | |
| Defendants. | | |

*** 

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Howard County Public School System ("HCPSS"), Howard County Board of Education ("BOEHC"), Dr. Michael J. Martirano, David Larner, Pamela Murphy, Josh Wasilewski, Richard Smart, Christina Renee Bos, and Ann Roy's Motion to Dismiss (ECF No. 11) and Motion to Strike (ECF No. 20), and self-represented Plaintiff Stephen Price's Motion for Leave to File a Surreply (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss and the Motion to Strike, and grant the Motion for Leave to File a Surreply.

# I.    BACKGROUND[1]

## A.    <u>Factual Background</u>

Plaintiff Stephen Price is a self-identified African American man previously employed as a teacher at Long Reach High School ("Long Reach") in Howard County, Maryland. (Compl. at 1, ¶¶ 6, 35, ECF No. 1). In November 2018, Price assigned students in his American Government class a project for which they chose a debate topic from the "International Debate Education Association's list of the top 100 debates." (<u>Id.</u> ¶ 10). Over the course of the project, Price made certain statements about Asian people and same-sex marriage that some students and administrators found inflammatory or inappropriate. (<u>Id.</u> ¶¶ 10–15). The Long Reach Principal, Defendant Josh Wasilewski, eventually issued Price a letter of reprimand in January 2019. (<u>Id.</u> ¶ 17). Also in January 2019, another teacher at Price's school reported to the administration that Price was teaching his students about police brutality, including showing videos of police brutality. (<u>Id.</u> ¶¶ 18–19).

Price filed a grievance in response to the letter of reprimand in February 2019. (<u>Id.</u> ¶ 20). After the administration twice denied his grievance, Price sought a transfer to another school, which was also denied although he knew of a white colleague who was allowed to transfer. (<u>Id.</u> ¶¶ 23–27, 50). He then filed and withdrew an official complaint with the HCPSS Office of Equity Assurance. (<u>Id.</u> ¶¶ 28–31). In June 2019, Price received another letter of reprimand for showing his students the police brutality video. (<u>Id.</u> ¶ 32). He alleges that "other teachers" showed the same police brutality video without issue. (<u>Id.</u> ¶ 16).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

In November 2019, Price showed two clips from the movie <u>Amistad</u> to his African American History class. (<u>Id.</u> ¶ 36). Defendant Richard Smart, Long Reach's Assistant Principal, admonished Price that "the County may not be ready for material such as <u>Amistad</u> and specifically described all of African-American history as a 'Controversial Issue.'" (<u>Id.</u> ¶ 38). Smart placed Price on a performance action plan ("PAP") "regarding the teaching of Controversial Issues." (<u>Id.</u> ¶ 40). That same month, Price saw a white male teacher show the entire movie <u>Gladiator</u> to his Modern World History class without being disciplined. (<u>Id.</u> ¶ 36).

Price began to experience medical issues caused by workplace stress. (<u>Id.</u> ¶¶ 34, 51). He states that he was diagnosed with depression and anxiety. (<u>Id.</u> ¶ 33). Additionally, in October 2019, he provided the school with documentation of his need for accommodations after having surgery for a ruptured quadriceps tendon. (Harries' Dec. 23, 2019 Letter at 1, ECF No. 16-1). His doctor, Thomas Harries, explained that Price could not stand for more than fifteen minutes at a time, could not climb stairs, and needed to sit while teaching. (<u>Id.</u>). He requested that Price be allowed "to stay in one designated location" or be given an aide to help with his "administrative duties." (<u>Id.</u>). Price allegedly requested accommodations twice and he was denied both times. (Compl. ¶¶ 35, 52−54, 63).[2]

---

[2] Price provides a few other facts concerning his medical condition and his post-surgery difficulties in his Opposition. (Pl.'s Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 4−5, ECF No. 16). The Court will not consider these facts because, as discussed more thoroughly below, they are not included in the Complaint and they do not qualify for an exception to the general rule that the Court may not consider extrinsic evidence when resolving a Motion to Dismiss. <u>See</u> <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011).

Price subsequently tried to reschedule a meeting with Smart set for December 4, 2019, only to receive a letter of reprimand the following month for failing to attend the meeting. (Id. ¶¶ 58–60). Other teachers at Long Reach allegedly spread rumors that Price called an African American student a "burnt marshmallow" and that he told a Muslim student to "go home on his magic carpet." (Id. ¶ 61). Price received another letter of reprimand in February 2020 for failing to meet the requirements of his PAP. (Id. ¶ 68). HCPSS converted to distance learning in March 2020 in response to the burgeoning coronavirus pandemic. (Id. ¶ 69).

In May 2020, Price filed a complaint with the Howard County Office of Human Rights and Equity and the Equal Employment Opportunity Commission. (Id. ¶ 71). After classes resumed the following fall, Price had issues with his laptop and other remote connectivity technology. (Id. ¶¶ 72–74). When Price failed to attend meetings as a result of these issues, those failures were held against him. (Id. ¶ 75). In January 2021, Wasilewski notified Price that he was recommending Price's termination. (Id. ¶ 76). On January 15, 2021, Price met with Wasilewski and other members of HCPSS administration, who offered him the "opportunity to share his side of the story." (Id. ¶¶ 77–78). Price alleges, however, that they refused to inform him of the wrongdoing that formed the basis for his recommended termination. (Id. ¶¶ 78–80). In February 2021, Price received a letter from Defendant Dr. Michael J. Martirano, HCPSS Superintendent, informing Price that he was suspended without pay and recommending termination. (Id. ¶ 82).

HPCSS scheduled a hearing regarding Price's employment on April 27, 2021. (Id. ¶ 87). According to Price, when he arrived for the hearing, Kathleen Hanks, Administrator

4

for the BOEHC, informed him that the hearing had been cancelled. (Id.). Defendants dispute this account, asserting that Price's then-attorney "requested a continuance and new dates were set for May 21 and 24, 2021." (Defs.' Mem. Opp'n Pl.'s Emergency Mot. Injunctive Relief at 3, ECF No. 21). According to Defendants, the BOEHC then "sent the Plaintiff a letter dated June 7, 2021, asking that the Plaintiff contact the [BOEHC] Office by June 14, 2021, indicating whether or not he wished to go forward with a Hearing." (Id.). Defendants assert that Price failed to timely respond. (Id.). Price then received a letter on August 3, 2021, informing him that the BOEHC had upheld his termination. (Compl. ¶ 88).

### B.   Procedural History

On March 7, 2022, Price filed this lawsuit against Defendants HCPSS, BOEHC,[3] Martirano, Wasilewski, Smart, Mark Blom,[4] David Larner, Pamela Murphy, Christina Renee Bos, and Ann Roy. (ECF No. 1). The three-count Complaint alleges: unlawful retaliation in violation of the First and Fourteenth Amendments to the United States Constitution, under 42 U.S.C § 1983 (Count I); failure to accommodate under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq. (Count II);

---

[3] Although Price named institutional Defendants HPCSS and "Howard County Board of Education" in his Complaint, Defendants submit that the only appropriate name for the intended Defendant is the Board of Education of Howard County. (See Mem. Support Defs.' Mot. Disimss ["Mot. Dismiss"] at 2 n.1, ECF No. 11-1). The Court will direct the Clerk to update the docket accordingly.

[4] The Court is aware that Defendant Mark Blom, General Counsel for BOEHC, was not properly served and that his summons was returned unexecuted. (See Summons, ECF No. 26). On July 8, Price requested a new summons to serve Blom. (See Correspondence from Stephen Price, ECF No. 27). The Court notes that the deadline to serve Blom had already passed when Price requested a new summons. Further, because the Court will dismiss Price's claims as to all of the individual Defendants, the issue will be moot. Accordingly, the Court declines to issue a new summons as to Blom.

and violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count III). (Compl. ¶¶ 90–102). On April 19, 2022, Defendants filed a Motion to Dismiss. (ECF No. 11). Price filed his Opposition, together with several exhibits, on May 5, 2022. (ECF No. 16). On May 18, 2022, Defendants filed a Reply and Motion to Strike Additional Documents ("Reply and Motion to Strike"). (ECF No. 20). Price responded by filing his Motion for Leave to File a Surreply on June 7, 2022. (ECF No. 23).

## II.     DISCUSSION[5]

### A.     <u>Motion to Strike</u>

Defendants urge the Court to strike the Exhibits accompanying Price's Opposition because they are "extraneous to the Complaint" and it is "inappropriate and improper" to consider such documents in deciding a Motion to Dismiss. (Reply Pl.'s Opp'n Mot. Dismiss & Mot. Strike ["Reply & Mot. Strike"] at 1, ECF No. 20).

Defendants are correct that a court may not typically consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., 794 F.Supp.2d at 611. But this general rule is subject to several exceptions. First, a court may consider

---

[5] The Court notes that Price requests leave to file a Surreply because "Defendants raised several issues for the first time" in their Reply and Motion to Strike. (Mot. Leave File Surreply at 1, ECF No. 23). Defendants counter that they did not raise any new arguments and that surreplies are generally not permitted by the Local Rules. (Defs.' Opp'n Pl.'s Mot. Leave File Surreply ¶¶ 1, 3, ECF No. 24).

Although it is true that Defendants did not raise any new arguments in their Reply, they filed a Motion to Strike within the same document (ECF No. 20) and Price is entitled to file an opposition to that Motion. See Local Rule 105(2)(a) (D.Md. 2021). Indeed, Price opposes the Motion to Strike in the last page of his short Surreply. (Surreply at 6, ECF No 23-1). Accordingly, the Court will grant Price's Motion for Leave to File a Surreply because he has a right to respond to the Motion to Strike.

documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

Here, four of Price's six exhibits are referenced and relied upon in the Complaint:

- Exhibit 1 (ECF No. 16-1): Dr. Harries' December 23, 2019 Letter, (see Compl. ¶ 35);
- Exhibit 2 (ECF No. 16-2): Framework for Teacher Evaluation, (see id. ¶ 41);
- Exhibit 5 (ECF No. 16-5): Dr. Harries' January 16, 2020 Letter, (see id. ¶ 53); and
- Exhibit 6 (ECF No. 16-6): Suspension Recommendation, (see id. ¶ 82).

These exhibits therefore qualify for an exception to the general rule of excluding extrinsic evidence and the Court will consider them in its decision on the Motion to Dismiss.

As to the remaining exhibits, the Letter on Racism in HCPSS and the OHRE Findings Letter (ECF Nos. 16-3, 16-4), the Court finds that they are not referenced or relied

upon in the Complaint and that no other exception applies. Accordingly, the Court will deny the Motion to Strike as to Exhibits 1, 2, 5, and 6, and grant it as to Exhibits 3 and 4.

**B.  Motion to Dismiss**

Defendants have moved to dismiss all three counts in the Complaint. The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. <u>Albright</u>, 510 U.S. at 268; <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

### 1.    First Amendment Violation & Retaliation

Price raises a claim that Defendants deprived him of his First Amendment rights by retaliating against him for exercising free speech and academic freedom in his classroom. (Count I; Compl. ¶ 92). Specifically, Price claims that the statements he made during a class debate exercise for the purpose of playing devil's advocate were "protected activity." (<u>See</u> <u>id.</u> ¶¶ 13, 91). Price further alleges that he had academic freedom to decide which education materials to use and which videos the class should watch. (<u>See</u> <u>id.</u> ¶ 92). Defendants argue that Price was a public-school teacher and therefore that he had no unrestricted rights of free speech or academic freedom. (Mot. Dismiss at 7). The Court agrees with the Defendants and will dismiss Count I.

Not all speech by government employees is protected by the First Amendment. Indeed, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006). The government has "far broader powers" as an employer to restrict speech than it does to restrict the speech of the general public. <u>See, e.g.</u>, <u>Waters v. Churchill</u>, 511 U.S. 661, 671

(1994) ("[T]he government as employer indeed has far broader powers than does the government as sovereign.").

Nevertheless, "public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti, 547 U.S. at 417 (citing Pickering v. Bd. of Ed. of Twp., 391 U.S. 563, 568 (1968)). To determine whether a public employee's speech merits First Amendment protection, courts balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Connick v. Myers, 461 U.S. 138, 142 (1983) (quoting Pickering, 391 U.S. at 568). The Fourth Circuit has noted that:

> In performing this balancing test, a reviewing court must make two inquiries. It examines, first of all, whether the speech at issue was that of a private citizen speaking on a matter of public concern. If the employee was speaking as a citizen on a matter of public concern, the court must consider whether the employee's interest in First Amendment expression outweighs the public employer's interest in what the employer has determined to be the appropriate operation of the workplace.

Lee v. York Cnty. Sch. Div., 484 F.3d 687, 694 (4th Cir. 2007) (citations omitted). If the employee does not speak as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Garcetti, 547 U.S. at 418. Further, when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

In the instant case, Price did not speak as a citizen on matters of public concern and therefore the First Amendment does not protect his speech. He made comments during a class debate and showed videos while teaching students in his classroom. (Compl. ¶¶ 10−12). Thus, those statements were made "pursuant to [his] official duties" and Price was not speaking as a citizen. See Garcetti, 547 U.S. at 421. Consequently, the Constitution does not shield him from discipline. See id.

Further, Price does not have unlimited free speech or academic freedom to choose which videos or education materials he implements in class. In Boring v. Buncombe County Board of Education, the Fourth Circuit found that a public-school teacher had no constitutional right to select a play for her class to perform. 136 F.3d 364, 370 (4th Cir. 1998) ("[T]he school, not the teacher, has the right to fix the curriculum."). Similarly, in Lee v. York County School Division, the Fourth Circuit found that plaintiff teacher had no First Amendment right to post materials about religion, politics, and current events on his classroom bulletin board. 484 F.3d 687, 694−95 (4th Cir. 2007) (noting that Lee's argument that he spoke as a citizen on matters of public concern was contrary to precedent that allowed public schools to "regulate speech that occurs within a compulsory classroom setting"). Here, as in Boring and Lee, Price has no First Amendment right to choose curricular materials. Accordingly, the Court will dismiss Count I.

In addition to the First Amendment claim, Price mentions a violation of his procedural due process rights under the Fourteenth Amendment in Count I. (See Compl. ¶¶ 87, 92−93). Price does not formally allege such a violation in an official count in the Complaint, and Defendants do not brief the issue in their Motion to Dismiss. Nevertheless,

given that Price is pro se and the Court must construe the Complaint broadly, the Court will briefly address whether Price states a claim for violation of his procedural due process rights.

To be successful in an action alleging denial of procedural due process in violation of a property interest, a plaintiff must demonstrate that he had a protected property interest, that he was deprived of that interest, and that he was afforded less process than was due. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–41 (1985). Here, there is no dispute that Price was tenured and thus had a protected property interest. (Compl. ¶ 40; Mot. Dismiss at 7). It is equally clear that he was deprived of that interest because he was terminated. (Id. ¶ 88). Therefore, the Court need only determine whether he was afforded less process than he was due.

"[A] public employee with a property interest in continued employment is ordinarily entitled to a limited hearing prior to termination and a more comprehensive hearing after termination." Samuels v. Tschechtelin, 763 A.2d 209, 232–33 (Md.Ct.Spec.App. 2000). The pretermination hearing "should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Gilbert v. Homar, 520 U.S. 924, 929 (1997). The Supreme Court has held that the "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." Id.

It is undisputed that BOEHC held a hearing and gave Price the opportunity to tell his side of the story. (Compl. ¶ 78). Further, although Price asserts that he did not have

notice of "the issues he was being accused of that warranted his termination," (<u>id.</u>), the Court finds his due process claim implausible because Defendants provided him with oral and written notice of their issues with Price many times:

- "On January 10, 2019, Josh Wasilewski, issued a letter of reprimand to the Plaintiff for [allegedly homophobic and racist] comments made during the November 2018, debate project," (<u>id.</u> ¶ 17);
- "On June 5, 2019, the Plaintiff received a letter of reprimand for completing the police brutality activity with his students. He was also accused of insubordination regarding meetings," (<u>id.</u> ¶ 32);
- "On about November 5, 2019, Richard Smart told the Plaintiff that he would be on a full evaluation cycle and that he would be put on a Performance Action Plan regarding the teaching of Controversial Issues," (<u>id.</u> ¶ 40);
- "On January 10, 2020, Mr. Wasilewski issued a letter of reprimand because the Plaintiff did not attend the December 4, 2019 meeting," (<u>id.</u> ¶ 60);
- "On February 21, 2020, the Plaintiff was issued a letter of reprimand for allegedly failing to comply with the Performance Action Plan," (<u>id.</u> ¶ 68);
- Sometime after the May 2020, Price had connectivity issues working from home and "was unable to access some meetings," resulting in class observations and an "unsatisfactory rating from Ms. Bos," (<u>id.</u> ¶ 75); and
- "On or about February 10, 2021, the Plaintiff received a letter from Dr. Michael J. Martirano, Superintendent of Howard County Public Schools, which stated that he recommended the Plaintiff was being suspended without pay and that he recommended termination . . . [t]he letter cited insubordination, willful neglect of duty, misconduct in office, and incompetence," (<u>id.</u> ¶ 82−83).

Construing these facts in the light most favorable to Price, the Court finds that he received adequate due process and notice of the charges against him. Accordingly, to the extent that Price pleads a claim for a Fourteenth Amendment due process violation, the Court will dismiss that claim.

### 2.    ADA Claim

Next, Price raises a claim for violation of the ADA. (Count II). Defendants first move to dismiss Price's ADA claim as to the individual defendants named in the Complaint

because the ADA provides for a cause of action against employers only and not individuals. (Mot. Dismiss at 13). The Defendants are correct that "the ADA does not recognize a cause of action for discrimination by private individuals." See Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999); see also 42 U.S.C. § 12312 (forbidding discrimination by a public entity). Price does not cite any authority to refute this precedent. Thus, the Court finds that Price's discrimination claims against the individual Defendants are not available under the ADA and will dismiss Count II as to Martirano, Larner, Murphy, Wasilewski, Smart, Bos, and Roy.

Next, the Defendants argue that Price failed to allege sufficient facts to establish a failure to accommodate claim under the ADA. At bottom, the Court finds that Price does not provide sufficient facts regarding the essential functions of his position in the Complaint, but that he may have a cognizable claim. Accordingly, the Court will allow Price to amend the Complaint to allege those additional facts.

To plead a failure to accommodate claim, a plaintiff must show:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and thus the Court must liberally construe Price's Complaint. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984). Construing the factual allegations set forth above in the light most favorable to Price, the Court could reasonably infer that Price had a

qualifying disability due to his quadricep surgery, that he gave notice to Defendants with his accommodation requests, and that Defendants refused to make accommodations. Nevertheless, Price fails to plead sufficient facts to establish the third element of his claim because he does not plead any facts explaining his essential job functions or showing that he could perform those essential job functions with reasonable accommodation.

Given that Price is self-represented and he may have knowledge of facts that could support a cognizable failure to accommodate claim, the Court will grant Price twenty-eight days to file an Amended Complaint. His Amended Complaint should include all the facts relevant to each element of his failure to accommodate claim, including but not limited to the details about his disability, his essential job functions, the accommodations requested, when he requested the accommodations, an explanation of how the accommodations would allow him to perform the essential job functions, and when and how BOEHC refused to make accommodations.

The Court further notes that Price's claim may be subject to dismissal for failure to exhaust administrative remedies through the Equal Employment Opportunity Commission ("EEOC"). Byington v. NBRS Fin. Bank, 903 F.Supp.2d 342, 348 (D.Md. 2012) (stating that plaintiff must file a timely charge of discrimination with the EEOC and receive a right-to-sue letter before filing a federal lawsuit stemming from ADA violations). Although Price alleges that he filed an EEOC charge in May 2020, (Compl. ¶ 71), he did not allege that he received a right to sue letter on the failure to accommodate claim nor did he attach such a letter to the Complaint. Thus, Price should also include facts and attach documents, if any, establishing his efforts to exhaust his remedies in his Amended Complaint.

Price is advised that if he files an Amended Complaint, it will replace the original complaint filed. The general rule is, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mt. Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quoting Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160, 162 (2d Cir. 2000)). Therefore, the Amended Complaint required by this Order must include all of the ADA claim allegations against the BOEHC, so that the Amended Complaint may stand alone as the sole complaint in this action which BOEHC must answer.

Accordingly, the Court will dismiss Count II as to the individual defendants but not as to the BOEHC. Further, Price is granted twenty-eight days from the date of this Memorandum and the corresponding Order to amend his Complaint as to his ADA claim.

### 3.    Racial Discrimination Claim Under Title VII

Price brings his discrimination and retaliation claims under Title VII and 42 U.S.C. § 1983. (Count III; Compl. ¶¶ 99−102). Defendants first move to dismiss Price's claim as to the individual defendants named in the Complaint because Title VII, like the ADA, does not provide a cause of action against individuals. (Mot. Dismiss at 17). The Court agrees and will dismiss Count II as to the individual Defendants because it is well-established law that Title VII does not provide for individual liability. See Whitaker v. Nash-Rocky Mount Bd. of Educ., 546 F.App'x 209, 211 (4th Cir. 2013) ("We reject Whitaker's suggestion that Title VII permits him to proceed against Defendants [] in their individual capacities.").

Second, Defendants argue that Price fails to allege sufficient facts to state a plausible claim for Title VII discrimination. Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because he has "opposed" a practice that Title VII forbids. 42 U.S.C. § 2000e-3(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)). Unsupported or conclusory factual allegations devoid of any reference to actual events will not suffice and the Court need not take them as true. See United Black Firefighters, 604 F.2d at 847.

The Court finds that several of Price's allegations are conclusory and insufficient to plead a Title VII violation. These include his broad assertions that: he was "deprived . . . of his rights based on his race," (Compl. ¶ 100); Defendants use PAPs to "mak[e] it easier to terminate African American teachers," (id. ¶ 44); "decisions were being made based upon colorism (his dark complexion) and race," (id. ¶ 47); and HCPSS "has a history of racial problems." (Opp'n at 5).

Further, the remaining facts in the Complaint do not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Price's claim under the burden-shifting

framework first articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

To establish a discrimination or retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework, Price must <u>eventually</u> put forth a prima facie case by establishing that:

> (1) he belongs to a protected class;
> (2) he suffered an adverse employment action;
> (3) at the time of the adverse action, he was performing his job
> at a level that met his employer's legitimate expectations . . . ;
> and
> (4) he was rejected [or terminated] under circumstances giving
> rise to an inference of unlawful discrimination.

See <u>Adams v. Trs. of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)).

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. See <u>Swierkiewicz</u>, 534 U.S. at 510 ("The prima facie case under <u>McDonnell Douglas</u>, however, is an evidentiary standard, not a pleading requirement."); <u>accord</u> <u>Parker v. Child.'s Nat'l Med. Ctr., Inc.</u>, No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" <u>Bing v. Brivo Sys., LLC</u>, 959 F.3d 605, 617 (4th Cir. 2020) (quoting

Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558. This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Court considers the "totality of the circumstances" in determining whether Price has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Notwithstanding these qualifiers and the obligation to liberally construe the Complaint, Price's claim is deficient because the only allegations it contains that could support an inference of discriminatory intent are those allegations relating to Price's purported comparators. This Court has previously dismissed Title VII complaints in which the only allegations of discriminatory intent come from insufficient comparator evidence.

See Chatelle v. Maryland, No. GLR-21-1734, 2022 WL 2953042, at *8 (D.Md. July 25, 2022) (dismissing complaint when comparator evidence fails to establish discriminatory intent or causation). Further, to the extent they intend to rely on comparator evidence, plaintiffs in the Fourth Circuit demonstrate that they are similarly situated with a comparator "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Tinsley v. City of Charlotte, 854 F.App'x 495, 500–01 (4th Cir. 2021) (quoting Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019)).

Here, Price's comparator allegations are unconvincing. He first alleges that "other teachers" used the police brutality video without being disciplined. (Compl. ¶ 16). Because Price does not identify the race of these "other teachers," the Court cannot infer that they were outside of the protected class or that Price was disciplined because of his race. See White, 375 F.3d at 295 (requiring comparators to be outside of the plaintiff's protected class). Second, Price states that he was disciplined for using Amistad clips while a white teacher showed Gladiator without issue. (Compl. ¶ 36). These are two different films and thus Price does not establish that both he and the white teacher engaged in the same conduct. See Tinsley, 854 F.App'x at 500–01. Further, it is unclear how the different treatment of these films shows discriminatory intent as to Price's race. Finally, Price alleges that he requested to transfer schools and was denied although a white teacher was allowed to transfer due to a hostile work environment complaint. (Compl. ¶ 50). Again, Price fails

to establish or even allege with specific facts that the white teacher's transfer arose out of the same or similar circumstances of Price's requested transfer. In the Complaint, Price states that it was BOEHC policy to not allow a transfer for teachers on a PAP. (Id. ¶ 46). He does not allege that the white teacher who transferred schools was also on a PAP, and therefore the Court cannot discern whether Defendants discriminated against Price based on the refusal of his transfer request.

In sum, Price's comparator evidence does not give rise to the inference that Defendants took adverse action against him with discriminatory intent because of his race. In fact, even viewing the facts in Price's Complaint in the light most favorable to him, the Court might infer that Price was terminated not due to his race, but because he made offensive comments during class debate exercises, (id. ¶¶ 11, 12), allegedly called an African American student a "burnt marshmallow," told a Muslim student "to go home on his magic carpet," (id. ¶ 61), and failed to comply with the PAP, (id. ¶ 68). See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015) (finding plaintiff's complaint deficient because it "le[ft] open to speculation the cause for the defendant's decision") (quoting Twombly, 550 U.S. at 567). Accordingly, the Court will dismiss Price's Title VII claim.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Motion to Dismiss (ECF No. 11), grant in part and deny in part the Motion to Strike (ECF No. 20), and grant the Motion for Leave to File Surreply (ECF No. 23). A separate Order follows.

Entered this 11th day of January, 2023.

_____/s/_____
George L. Russell, III
United States District Judge