IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN PRICE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-541 |
| BOARD OF EDUCATION OF HOWARD COUNTY, | * | |
| | * | |
| Defendant. | | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on self-represented Plaintiff Stephen Price's Motion for Reconsideration (ECF No. 30) and Defendant Board of Education of Howard County's ("the Board") Second Motion to Dismiss (ECF No. 34). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will deny the Motion for Reconsideration and grant in part and deny in part the Motion to Dismiss.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff Stephen Price is a self-identified African American man previously employed as a Howard County Public Schools ("HCPS") teacher. (Am. Compl. ¶ 8, ECF No. 33). As a teacher, Price's essential job duties were "planning, conducting, and

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 33) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

assessing classroom instructional activities," "coordinating basic skills testing," "maintaining educational records," "assessing and recording progress toward educational learning goals," "developing and implementing individualized and independent lesson plans," and "providing counseling and guidance." (Id. ¶ 12).

As explained more fully in the Court's January 11, 2023 Memorandum Opinion, Price alleges that HCPS employees illegally censored his speech in the classroom and prevented him from discussing certain topics with students. (Id. ¶¶ 15−17; Jan. 11, 2023 Mem. Op. ["Mem. Op."] at 2−3, ECF No. 28). He also alleges racial discrimination because he was not permitted to teach about police brutality or to show the film Amistad. (Am. Compl. ¶¶ 17−19; Mem. Op. at 3).

Further, on August 26, 2019, Price was diagnosed with depression and anxiety. (Am. Compl. ¶ 42). He suffers from insomnia, nightmares, and teeth grinding. (Id. at 49–50). He applied for FMLA leave to address his mental health and HCPS approved his request from August through October 10, 2019. (See id. ¶ 43; Sept. 10, 2019 Letter at 1, ECF No. 33-12). Upon a request for extension, HCPS extended his leave through November 1, 2019. (See Oct. 8, 2019 Letter at 1, ECF No. 33-14; FMLA Approval at 1, ECF No. 33-21). HCPS told him that if he did not return to work as scheduled in November, his absence would be "construed as lack of interest in continued employment." (Nov. 1, 2019 Letter at 1, ECF No. 33-2).

On September 28, 2019, Price tore his right quadricep and he had surgery on October 3, 2019. (Am. Compl. ¶¶ 46−47). After surgery, Price had screws and wires in his leg and he faced a long, painful recovery. (See id. ¶ 47). In late October 2019, Price's

surgeon, Thomas Harries, informed HCPS that Price could not stand for more than fifteen minutes at a time, could not climb stairs, and needed to sit while teaching. (Id. ¶ 51). He requested that Price be allowed "to stay in one designated location" or be given an aide to help with his "administrative duties." (Id. ¶ 58). On November 1, 2019, Price received an approval letter for the following ADA accommodations for his return to work: no climbing stairs, no standing for more than 15 minutes at a time, must sit while teaching and will be provided with a chair to use during class. (See Nov. 1, 2019 Letter at 1). HCPS said these accommodations would last until January 5, 2020. (Id.).

On November 5, 2019, Price returned to work. (Am. Compl. ¶ 55). Despite his injury, Price was required to push a cart and use four classrooms in different buildings. (Id. ¶¶ 56, 65). As he navigated the halls of the school, he often had to make sudden movements to avoid student fights and other incidents, which caused him knee pain. (Id. ¶ 57). Further, Price alleges that he frequently was forced to stand for more than fifteen minutes at a time because his job required him to manage the classroom, get supplies from closets, make copies, attend meetings, and complete other miscellaneous tasks. (Id. ¶ 59).

On November 8, 2019, Price asked Richard Smart, the Assistant Principal, if he could stay in one classroom or have an aide "to assist with essential functions of the job." (Id. ¶ 58). Smart told him that he would look into the possibility of an aide and that he was Price's turn to rotate classrooms. (Id.). On November 15, 2019, Smart told Price that he would not be given an aide. (Id. ¶ 64).

Price's physical therapist told him that he was not healing as quickly as he should be due to his excessive physical activity at work. (See id. ¶ 74). On December 23, 2019,

Harries wrote a letter to HCPS to inform school officials that Price was not receiving his accommodations of no standing for more than fifteen minutes, no climbing stairs, and access to an elevator. (Dec. 23, 2019 Letter at 1, ECF No. 33-23). Harries further stated that Price's healing would be delayed without these accommodations and that the school should make arrangements for an aide or for Price to stay in one location throughout the day. (Id.). HCPS did not make any changes to Price's work conditions. (Am. Compl. ¶ 68).

Harries wrote an almost identical letter on January 16, 2020 to again encourage HCPS to provide Price with his accommodations by allowing him to have an aide or a single classroom. (Jan. 16, 2020 Letter at 1, ECF No. 33-24). On January 27, 2020, David Larner, HCPS's Chief Human Resources Officer, informed Price that his accommodations would be extended through February 15, 2020 and that the school would again attempt to see if a student aide was available to assist him. (See Jan. 27, 2020 Email at 1, ECF No. 33-25). The school never made an aide available to Price. (Am. Compl. ¶ 73).

Price alleges that with reasonable accommodations, he would have been able to fulfill the essential functions of his job. (Id. ¶ 87). An aide could have pushed the cart, carried books, equipment, and otherwise to eased the burden on Price's injured leg. Further, the aide could have helped Price to set up classrooms, pass out materials, and assisted with other errands in the building. (Id.).

**B. Procedural History**

On May 28, 2020, Price filed a complaint with the Howard County Office of Human Rights and Equity and the Equal Employment Opportunity Commission. (Am. Compl. ¶ 83). He received a right-to-sue letter on December 6, 2021. (Id.). On March 7, 2022, Price

filed his original Complaint alleging: unlawful retaliation in violation of the First and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. § 1983; failure to accommodate under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq.; and violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Compl. ¶¶ 90–102). On April 19, 2022, Defendants filed their First Motion to Dismiss. (ECF No. 11). On January 11, 2023, the Court granted the Motion to Dismiss in part and denied it in part. (ECF No. 38).[2] The Court dismissed all claims except the ADA failure to accommodate claim against the Board, and gave Price an opportunity to amend the Complaint as to that claim only. (Jan. 11, 2023 Order at 1−2, ECF No. 38). The claims against all the individual Defendants were dismissed and only the Board remains as a Defendant. (Id.)

On January 25, 2023, Price filed a Motion for Reconsideration asking the Court to reverse the dismissal of his claims for violations of First and Fourteenth Amendments and Title VII against the Board and the individual Defendants. (Mot. Recons. at 1, ECF No. 30). The Board filed an Opposition on February 2, 2023 (ECF No. 31) and Price did not file a reply.

On February 7, 2023, Price filed his Amended Complaint, which provides additional facts concerning the failure to accommodate claim (Count I) and also pleads claims for intentional infliction of emotional distress (Count II) and negligent infliction of emotional

[2] ECF No. 38 is a corrected version of the Court's previous order, ECF No. 29-1. The previous order erroneously did not dismiss all the claims against Defendant Mark Blom and this error was corrected in ECF No. 38.

distress (Count III). (Am. Compl. ¶¶ 84−101.). The Board filed a Second Motion to Dismiss on February 15, 2023 (ECF No. 34). Price opposed the Motion on March 14, 2023 (ECF No. 36) and the Board filed a Reply[3] on March 24, 2023 (ECF No. 37).

[3] In its Reply, the Board requests that the Court strike certain Exhibits that Price attached to his Opposition. (See Def.'s Reply Pl's Opp'n Mot. Dismiss ["Reply"] at 1, ECF No. 37). Price attaches eight Exhibits in a single document, as shown in ECF No. 36-1. The Board argues that Exhibits 4−8B are improper to consider in deciding the Motion to Dismiss because they do not fit within any exception to the general rule that courts may not consider extrinsic evidence. (Id. at 1−2).

A court may not typically consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001).

Here, the Court agrees with the Board that Exhibits 4−8B are not integral to the Amended Complaint, nor are they referred or relied upon. The exhibits include: an affidavit by Price (Exhibit 4); an AP Score Report containing identifying information about several of Price's students (Exhibit 5); emails from Price's former counsel that do not appear to relate to any issue raised in the Amended Complaint (Exhibit 6); other irrelevant emails between Price and an HCPS official (Exhibit 7); and three letters of support written by Price's friends (Exhibits 8, 8A, and 8B). (Exhibits at 5−19, ECF No. 36-1). These Exhibits must be stricken, especially because of the information about Price's students. However, because these Exhibits are contained within a single document rather than separate docket entries, the Court will direct the Clerk to strike the Exhibits (ECF No. 36-1) completely, and Price will be granted the opportunity to re-file Exhibits 1−3 if he wishes to do so for the record within three weeks of the date of this Memorandum Opinion and Order. Price is advised that re-filing the Exhibits is not required and that he will not forfeit any substantive or procedural rights by not filing them.

## II. DISCUSSION

### A. Standard of Review

#### 1. Motion for Reconsideration

Price's Motion for Reconsideration is governed by Federal Rule of Civil Procedure Rule 59(e) because he filed it within twenty-eight days of the Court's January 11, 2023 Memorandum Opinion and Order. See Bolden v. McCabe, Weisberg & Conway, LLC, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). Rule 59(e) authorizes a district court to alter or amend a prior final judgment. See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 470 n.4 (4th Cir. 2011). A federal district judge's power to grant a Rule 59(e) motion is discretionary. Robison v. Wix Filtration Corp., LLC, 599 F.3d 403, 411 (4th Cir. 2010). In general, granting a motion for reconsideration "is an extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 124 (2d ed. 1995)). Furthermore, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" Lynn v. Monarch Recovery Mgmt., Inc., 953 F.Supp.2d 612, 620 (D.Md. 2013) (quoting Sanders v. Prince George's Pub. Sch. Sys., No. RWT-08-501, 2011 WL 4443441, at *1 (D.Md. Sept. 21, 2011)).

"Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." U.S. ex rel. Carter

v. Halliburton Co., 866 F.3d 199, 210–11 (4th Cir. 2017) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). With respect to the third factor, there must be more than simply a "mere disagreement" with a decision to support a Rule 59(e) motion. Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993). "A 'factually supported and legally justified' decision does not constitute clear error." Jarvis v. Berryhill, No. TMD-15-2226, 2017 WL 467736, at *1 (D.Md. Feb. 3, 2017) (quoting Hutchinson, 994 F.2d at 1081–82). As to the "manifest injustice" standard, courts focus on whether there was fairness in the administrative process or a denial of due process. Id. (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)).

**2. Motion to Dismiss**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and thus the Court must liberally construe Price's Complaint. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.   Analysis**

    **1.   Motion for Reconsideration**

Price asks the Court to reconsider dismissing his claims for violations of his First and Fourteenth Amendment rights and for discrimination under Title VII. (Mot. Recons. ¶¶ 1–17). Price does not recognize the applicable standard under Federal Rule 59(e) and he does not argue that reconsideration is appropriate because of a change in controlling law, newly discovered evidence, or to correct a clear error of law or prevent manifest

injustice. See Halliburton Co., 866 F.3d at 210–11 (explaining that a motion for reconsideration under Rule 59 can be granted only in one of these three circumstances). Instead, Price asks the Court to consider additional facts because he is a pro se litigant and he erroneously believed that he would have a chance to reveal these facts during discovery. (Mot. Recons. ¶ 1).

The Court will deny Price's Motion for Reconsideration because his desire to add further facts in support of his claims is not a valid basis to grant a Rule 59 motion. Price essentially seeks to relitigate his claims, which is expressly barred by Fourth Circuit precedent. See Lynn, 953 F.Supp.2d at 620 (motions for reconsideration are "not the proper place to relitigate a case after the court has ruled against a party"). The Court notes, however, that even if it did consider the additional facts in Price's Motion, the facts would not alter the Court's analysis in its Memorandum Opinion or the ultimate dismissal of his claims.

First, as to the due process claim under the Fourteenth Amendment, Price merely states that "he was not afforded due process," but he does not provide any additional facts on that subject or explain why the Court's reasoning was incorrect. (Mot. Recons. ¶ 2). Accordingly, the due process claim will remain dismissed.

Second, regarding the Second Amendment free speech claim, Price cites Sheldon v. Dhillon, No. C-08-03438 RMW, 2009 WL 4282086, at *1 (N.D.Cal. Nov. 25, 2009), and argues that the Court erred in determining that he had no right to decide the curriculum he taught. (Id. ¶ 2). Sheldon does not bind this Court, and further it is inapposite because the applicable law in the Ninth Circuit was unclear on First Amendment rights during

classroom instruction. See Sheldon, 2009 WL 4282086, at *4. As explained in this Court's Memorandum Opinion, the Fourth Circuit law on the subject is clear and dispositive of Price's claim. (Mem. Op. at 11).

Third and finally, Price seeks to bolster his Title VII discrimination claim with the following additional facts:

- HCPS disciplined black students and teachers more than white students and white teachers;
- HCPS hired a Director of Diversity and Inclusion who quit after three years;
- Another teacher played a Dave Chappelle video in class that contained a racial slur and he was not placed on a PAP;
- A white teacher was allowed to discuss race in class;
- Two other teachers allegedly made discriminatory comments about African American teachers;
- Price was the only African American teacher in his department;
- Price was disciplined and intimidated for showing the movie Amistad, which concerns the enslavement of black people, while another teacher was able to show Gladiator, a movie about white enslavement, without discipline;
- Another white teacher allegedly attended a high school named for a founder of the Ku Klux Klan.

(Mot. Recons. ¶¶ 2−17).

Even if the Court were to consider these facts, none of them establish a plausible claim for racial discrimination. The majority of the allegations, such as the alleged imbalance in discipline of white vs. black students, the Director of Diversity's decision to quit after three years, and isolated comments made by other teachers, are too general and unrelated to Price's situation to show that he was treated differently by school officials and terminated because of his race. Further, Price's purported comparator evidence, that other teachers discussed race in class and showed the movie Gladiator, fails to establish that those teachers were similarly situated to Price and engaged in the same conduct. See

Tinsley v. City of Charlotte, 854 F.App'x 495, 500–01 (4th Cir. 2021) (requiring that comparator evidence must show that the plaintiff and the comparator "were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it" (cleaned up)).

Price did not simply discuss race—HCPS disciplined him because he allegedly showed a certain police brutality video and because he made inappropriate comments while playing "devil's advocate" during a class debate exercise. (Am. Compl. ¶¶ 15–17). He does not allege that the other teacher behaved similarly. As to the allegations concerning Amistad and Gladiator, the Court already addressed this issue in its Memorandum Opinion when it found that showing different films did not establish that Price and the other teacher engaged in the same conduct. (See Mem. Op. at 20).

Accordingly, the Court declines to reconsider the dismissal of Price's claims for violations of the First and Fourteenth Amendments and Title VII and Price's Motion for Reconsideration will be denied.

**2. Motion to Dismiss**

As a preliminary matter, the Court's January 11, 2023 Memorandum Opinion and Order allowed Price to amend his Complaint only as to the ADA claim against the Board. (Mem. Op. at 14–15; Jan. 11, 2023 Order at 2). Nevertheless, Price also includes additional claims for intentional infliction of emotional distress (Count II) and negligent infliction of emotional distress (Count III) in his Amended Complaint. (Am. Compl. ¶¶ 89−101). Price

did not receive leave of the Court to add additional claims, and therefore the Court need not consider them and they will be dismissed.

The Court notes, however, that if it did consider Price's tort claims, they would be dismissed for failure to state a claim. First, regarding the intentional infliction of emotional distress claim, Price brings this claim against Mark Blom, David Larner, Josh Wasliweski, and Richard Smart. (See id. ¶ 90). These individuals are no longer defendants in this action because the Court dismissed all of the individual Defendants in its January 11, 2023 Memorandum and Order. (ECF No. 38). Further, Price fails to plead sufficient facts to establish his claim. See Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 465−66 (D.Md. 2002) (stating that to plead a prima facie case of intentional infliction of emotional distress, plaintiffs must show: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe). Courts have stated that "the tort of intentional infliction of emotional distress is rarely viable" in Maryland. Id. at 466. Workplace conduct, in particular, "almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress." Id.

Here, Price fails to show extreme or outrageous behavior. Although he provides bald allegations that Defendants' conduct was "outrageous," (Am. Compl. ¶ 90), these

allegations are conclusory, and the Court need not take them as true. Accordingly, the intentional infliction of emotional distress claim will be dismissed.

Second, as to the negligent infliction of emotional distress claim, Maryland courts do not recognize an independent tort for that claim. Bond v. U.S. Postal Serv. Fed. Credit Union, 164 F.Supp.3d 740, 750 (D.Md. 2015). Accordingly, the negligent infliction of emotional distress claim will also be dismissed.

The Court now turns to the Amended Complaint's central claim: failure to accommodate under the ADA. To plead a failure to accommodate claim, Price must show:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). The Board argues that Price fails to establish the third element because he does not plead that an aide was necessary to perform the essential functions of his job. (Mem. Supp. Def.'s Mot. Dismiss ["Mot. Dismiss"] at 7, ECF No. 34-1). Further, the Board contends that his request for an aide is unreasonable. (Id. at 9). Price counters that he establishes the third element of his claim because an aide, or another accommodation, would have allowed him to not stand for more than fifteen minutes at a time. (See Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 8, ECF No. 36). He further argues that even if an aide was an unreasonable accommodation, the Board was obligated to pursue other options. (Id. at 14). At bottom, the Court agrees with Price.

First, Price alleges sufficient facts to establish he third element of his claim. In the Amended Complaint, Price explains that his duties as a teacher included moving between four different classrooms on different floors in different buildings while carrying materials and pushing a cart. (Am. Compl. ¶¶ 56–57). He further needed to set up each classroom, retrieve supplies from closets, pass out and collect materials from students, and attend meetings. (Id. ¶¶ 58, 59). He says that the combination of these duties often meant that he had to stand for more than fifteen minutes, which violated his accommodations as agreed upon by HCPS. (Id.). He suffered pain and further injury, which delayed his healing. (Id. ¶¶ 57, 59, 66, 69, 72, 74). With additional accommodations, such as an aide or a single classroom, Price alleges that he could have performed all of his duties properly. (Id. ¶ 87). Construing these facts in the light most favorable to Price, the Court can infer that with reasonable accommodation, he could perform the essential functions of his position.

In its Motion to Dismiss, the Board focuses on two of Price's statements to demonstrate that he did not allege that an aide was necessary to enable him to perform the essential functions of his job: Price lists his responsibilities and says that he "did all of these things while attempting to heal from his injury," (Am. Compl. at 87; Mot. Dismiss at 7–8), and he also says that an aide would have given him "some relief" from his duties. (Id.). According to the Board, Price's statements constitute an admission that he did not need an aide, and therefore that the Board was not required to provide one. (Mot. Dismiss at 8). In support of its argument, the Board cites Obnamia v. Shinseki, where the United States District Court for the Southern District of Ohio granted summary judgment to the defendant on a failure to accommodate claim in part because the plaintiff could perform all

the essential functions of her position without accommodation. No. 2:12-CV-58, 2013 WL 5408267, at *7 (S.D.Ohio Sept. 25, 2013), aff'd, 569 F.App'x 443 (6th Cir. 2014).

Although the Amended Complaint may be inartfully pled, the Court maintains that the allegations set forth above are sufficient to establish the third element of Price's claim. This Court is obligated to liberally construe Price's Amended Complaint because he is a self-represented litigant, and thus his use of the phrase "some relief" is not fatal to his claim. Further, although Price does say that he forced himself to travel between classrooms, carry materials, and do other activities that required him to stand for more than fifteen minutes, this does not mean that an accommodation was not necessary. Price also alleges that he experienced pain as a result, and that his physical therapist and surgeon agreed that his healing was delayed and that he was not receiving his required accommodation of not standing for more than fifteen minutes at a time. (Am. Compl. ¶¶ 67, 74). Thus, the Board's argument that further accommodation was not needed for Price to perform his duties is unconvincing.

Additionally, Obnamia does not bind this Court and it is distinguishable from the instant case. In Obnamia, the plaintiff suffered from hearing loss and tinnitus, or ringing in the ears. 2013 WL 5408267, at *1. She requested a private office so that her loud speaking voice would not be a distraction to others, and so that background noise from her coworkers would not further impair her hearing and concentration abilities. Id. at *1−2. The court granted summary judgment to the defendant and dismissed her claim because she could perform all of her duties without accommodation, and she did not have any evidence showing that a private office was medically necessary. Id. at *7.

First, Obnamia was before the court on motion for summary judgment, not a motion to dismiss, and thus a different standard of review applied. Second, the plaintiff's "primary consideration" in requesting accommodation was "concern over her coworker's reactions" to her disability. Id. at *7. This differs greatly from the instant case, where Price's ability to stand and walk is at issue. Further, the Obnamia plaintiff had no evidence apart from her own deposition that she needed a private office. Id. Here, Price alleges concrete injury and delay in healing without accommodation, and he also shows that two medical providers agreed that not standing for more than fifteen minutes was medically necessary. It is also noteworthy that HCPS itself already granted the accommodation of not standing for more than fifteen minutes, (see Nov. 1, 2019 Letter at 1), so the medical necessity of the accommodation is not at issue here as it was in Obnamia.

Next, the Court will address the Board's argument that an aide is an objectively unreasonable accommodation. (Mot. Dismiss. at 9). The Board first argues that assigning a current HCPS employee to help Price, or hiring a new one for that purpose, is unreasonable and not required by law. (Id. at 10). Second, the Board claims that assigning a volunteer student aide is also unreasonable because of logistical difficulties in finding available students, especially in November when the fall semester was well underway. (Id. at 11–12). Price counters that assigning a student aide would have been relatively simple, and that other, non-disabled teachers had aides. (Opp'n at 6). He also points out that HCPS could have assigned him to one classroom instead of providing him with an aide. (Id. at 6).

The Court agrees with the Board that the ADA does not require employers to hire new employees or to "reallocate job duties in order to change the essential functions of a

job." Shin v. Univ. of Md. Med. Sys. Corp., 369 F.App'x 472, 482 (4th Cir. 2010). As to assigning a student aide, however, Price has adequately alleged that this accommodation would be reasonable and the Court must take his Amended Complaint as true. The Board's fact-based arguments to the contrary are premature and better suited to a motion for summary judgment. Further, the Court notes that the Board's briefings are singularly focused on the aide issue, and that the Board completely fails to address the possibility of other accommodations, such as allowing Price to stay in one classroom. Accordingly, dismissal of Price's claim at this stage in the litigation would be inappropriate and the Motion to Dismiss will be denied as to the failure to accommodate claim.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the Motion for Reconsideration (ECF No. 30) and grant in part and deny in part the Motion to Dismiss (ECF No. 34). The Motion to Dismiss will be granted as to the claims for intentional infliction of emotional distress and negligent infliction for emotional distress, and denied as to the claim for failure to accommodate. A separate Order follows.

Entered this 13th day of July, 2023.

/s/
George L. Russell, III
United States District Judge