IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| STEPHEN PRICE, | * | |
| Plaintiff | * | |
| v. | * | Civ. No.: MJM-22-541 |
| BOARD OF EDUCATION OF HOWARD COUNTY, | * | |
| Defendant. | * | |

# MEMORANDUM

This matter is before the Court on self-represented plaintiff Stephen Price's ("Plaintiff") Motion for Leave to File an Amended Complaint (ECF 64) and Motion for Leave to File a Surreply (ECF 73), as well as Board of Education of Howard County's (the "Board" or "Defendant") Motion for Summary Judgment. (ECF 66). All Motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall deny Plaintiff's Motions for Leave to Amend and Leave to file a Surreply, and grant the Board's Motion for Summary Judgment.

I. BACKGROUND

A. Factual Background

Plaintiff is an African American man formerly employed as a teacher with Howard County Public Schools ("HCPS"). ECF 33 (Am. Compl.) ¶ 8. As a teacher, Plaintiff's duties included "planning, conducting, and assessing classroom instructional activities," "coordinating basic skills

1

testing," "maintaining educational records," "assessing and recording progress toward educational learning goals," "developing and implementing individualized and independent lesson plans," and "providing counseling and guidance." *Id*. ¶ 12.

On August 26, 2019, Plaintiff was diagnosed with depression and anxiety. ECF 33-11 at 2. Due to his depression and anxiety, Plaintiff suffers from impaired concentration, shorter attention span, and a diminished clarity of thought. *Id*. at 2–3. He applied for leave under the Family Medical Leave Act ("FMLA") to address his mental health, and HCPS approved his request for leave from August 21, 2019, through October 10, 2019. ECF 33-12 at 1. Upon request for an extension, by letter dated October 8, 2019, HCPS extended Plaintiff's leave through November 1, 2019. ECF 33-14. In a letter dated November 1, 2019, HCPS approved Plaintiff's accommodations for Plaintiff's return to work based on work restrictions suggested by his medical provider: no climbing stairs, no standing for more than fifteen minutes at a time, and sitting in a chair while teaching. ECF 33-2. The letter indicated that these accommodations would last until January 5, 2020. *Id*. HCPS told Plaintiff that if he did not return to work as scheduled in November 2019, his absence would be "construed as lack of interest in continued employment." *Id*.

On September 28, 2019, Plaintiff tore his right quadricep, and he had surgery on October 3, 2019. ECF 33-18 at 2. In late October 2019, Plaintiff's surgeon, Thomas Harries, informed HCPS that Plaintiff could not stand for more than fifteen minutes at a time, could not climb stairs, and needed to sit while teaching. *Id*. at 2–3.

On November 4, 2019, Plaintiff returned to work. ECF 66-13 (Wasilewski Affidavit) at ¶ 3.[1] On November 5, 2019, the Board conducted an ADA Interactive Process meeting with Plaintiff

---

[1] The Court notes that Plaintiff's Opposition to Board's Motion for Summary Judgment also includes a Motion to Strike the Affidavits of David Larner and Josh Wasilewski. ECF 69. Plaintiff argues that the affidavits should be stricken because Plaintiff did not have the opportunity to question the affiants about the content of their affidavits. The Court disagrees. On January 8, 2024, the Court granted Plaintiff's motion

to discuss his ADA accommodation requests. ECF 66-3 (Larner Affidavit) at ¶ 6. During the meeting, Plaintiff acknowledged that he was able to perform all of the essential functions of his job as a teacher, but that the medical providers recommended the following accommodations to assist with his medical condition: "keeping order in the classroom, additional time to perform written activities, sitting while teaching, and access to elevator." *Id*.; *see also* ECF 66-2 at 2 (Answer to Interrogatory No. 14). The issue of a student aide or assistant was discussed during the meeting, although it was not one of the accommodations recommended by either medical provider. ECF 66-3 at ¶ 6.

While Plaintiff asked for a student aide in November 2019, the first request for an aide from a medical provider came from Dr. Harries on December 23, 2019. ECF 33-23; ECF 66-3 ¶ 11; ECF 66-11. In the letter, Dr. Harries stated that Plaintiff "was not receiving" his accommodations of "no standing for more than fifteen minutes at a time, no climbing stairs" and elevator access. *Id*. On January 16, 2020, Dr. Harries wrote an almost identical letter requesting that HCPS accommodate Plaintiff by allowing him to have an aide or a single classroom. ECF 33-24.

On January 27, 2020, David Larner, HCPS's Chief Human Resources Officer, informed Plaintiff that his accommodations would be extended through February 15, 2020, and that the school would attempt to see if a student aide was available to assist him, given the extension of his disability accommodations. ECF 33-25 at 1.

---

to extend the discovery to give Plaintiff an opportunity to conduct depositions, ECF 55, but he failed to do so and, thereafter, never asked to extend or reopen discovery. Accordingly, Plaintiff's Motion to Strike will be denied.

### B. Procedural History

On March 7, 2022, Plaintiff filed a civil complaint against the Howard County Board of Education (the "Board" or "Defendant"), the Howard County Public School System, and several individual defendants (collectively, "Defendants") alleging retaliation under 42 U.S.C. § 1983, failure to accommodate under the Americans with Disabilities Act ("ADA"), and racial discrimination under Title VII of the Civil Rights Act of 1964. ECF 1. On April 19, 2022, Defendants filed a motion to dismiss for failure to state a claim. ECF 11. After briefing was completed, the Court granted in part and denied in part Defendants' motion to dismiss. ECF 29.

Plaintiff then filed an Amended Complaint asserting failure to accommodate under the ADA and claims for intentional and negligent infliction of emotional distress ("IIED" and "NIED," respectively). ECF 33. Defendants filed a motion to dismiss. ECF 34. The Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' motion, dismissing the IIED and NIED claims, while sustaining the ADA failure-to-accommodate claim. ECF 38, 39, 40.

The sole remaining claim is a claim for failure to accommodate under the ADA against the Board. In July 2023, the Board filed an Answer, ECF 41, and the Court entered a Scheduling Order setting various deadlines, including a deadline for amendment of pleadings on September 15, 2023, and a discovery deadline of December 12, 2023, ECF 42. On January 8, 2024, the Court granted in part and denied in part Plaintiff's Motion to Extend and Compel Discovery and extended the discovery deadline to January 29, 2024. ECF 55.

On April 25, 2024, Plaintiff filed a Motion for Leave to File a Second Amended Complaint ("Motion to Amend"), which would add two ADA retaliation claims and an ADA disparate treatment claim. ECF 64, 64-1. The Board opposed Plaintiff's motion, ECF 65, and filed a Motion

for Summary Judgment, ECF 66. Plaintiff filed a reply in support of his Motion to Amend, ECF 68, and a response in opposition to the Board's Motion for Summary Judgment, ECF 69. The Board filed a reply in support of its summary judgment motion. ECF 72. Plaintiff filed a Motion for Leave to File a Surreply, ECF 73, which the Board opposed, ECF 74, and Plaintiff filed a reply, ECF 75.

## II. MOTION TO AMEND

A party's amendment of its pleading is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B), if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a [Rule 12] motion, whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has endorsed a liberal approach to granting motions to amend, interpreting Rule 15(a) "to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal citations omitted). The longer a party waits to file a motion for leave to amend a pleading, the more likely a court will find the party acting in bad faith. *See Laber*, 438 F.3d at 427 (citing *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir. 1984)). "[D]iligence in filing [a] motion to amend" can "dispel[] inference[s] of bad faith." *Id.* at 427–28.

Plaintiff requests leave to file a Second Amended Complaint. ECF 64-1. Plaintiff's proposed Second Amended Complaint adds claims for Retaliation, Interference, and Disparate

Treatment under the ADA. *Id*. at ¶¶ 93–110. Aside from the added claims, the factual allegations are identical to the first Amended Complaint, save for one additional paragraph at the end of the factual summary stating that Plaintiff was terminated. *Id*. at ¶ 85.

The Court entered a Scheduling Order on July 31, 2023, setting September 15, 2023, as the deadline for amendment of pleadings. ECF 42. After that deadline passed, Plaintiff requested, and was granted, an extension of time to complete discovery. ECF 51; ECF 55. Plaintiff did not request an extension of time to amend his pleading, and no such extension of time was granted in the Court's Order. *See id.* Plaintiff has already filed one Amended Complaint, before the Scheduling Order was entered. ECF 33. Plaintiff's proposed amendment is not based on any newly discovered facts but is instead based on the same facts known to him at the time he filed the Amended Complaint—long before his deadline to amend his pleading. Plaintiff has failed to demonstrate the diligence necessary to establish good cause for a late amendment. He could have asserted his newly proposed ADA claims in the Amended Complaint and simply failed to do so. Moreover, the parties have completed discovery in this case, and the Court thus finds that permitting Plaintiff to insert new legal claims at this late stage of the litigation would be unfairly prejudicial to the Board. Because the timing of Plaintiff's Motion to Amend is unjustified by good cause, unfairly prejudices the Board, and gives rise to an inference of bad faith that Plaintiff has failed to dispel, the Court will deny the motion.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

[*intentionally left blank*]

B. Analysis[2]

Plaintiff asserts a claim for the Board's failure to accommodate under the ADA based on the failure to provide a classroom aide and failure to assign Plaintiff to a single, stationary classroom. The Board argue that it is entitled to summary judgment on this claim.

The ADA mandates that employers "mak[e] reasonable accommodations to the known physical or mental limitations" of a qualified employee with a disability. 42 U.S.C. §12112(b)(5)(A). The elements of a prima facie case for failure to accommodate under the ADA are "(1) that [the plaintiff] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [the] disability; (3) that with reasonable accommodation [the plaintiff] could perform the essential functions of the position; and (4) that the employer refused to make such accommodation." *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). When dealing with the question of whether an employee is a "qualified individual" entitled to a workplace accommodation, the "court must first consider whether that person is able to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 281–82 (4th Cir. 1995) (citing *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17 (1987)). Further, the fact that certain

---

[2] Price requests leave to file a surreply in opposition to the Board's summary judgment motion. ECF 73. "Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surreplies are not permitted unless so ordered by the court, pursuant to Local Rule 105.2(a), and should only be allowed when the "moving party would otherwise be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021) (cleaned up). In his motion, Price argues that the Court should consider his proposed surreply because the Board "raise[d] the issue of entitlement for the first time" in their summary judgment reply brief. ECF 73-1 at 1. The Board argues that this issue is not new, pointing out that the Board's opening brief includes an argument that the accommodations Price sought were not required by the ADA. ECF 74 at 2. The Court agrees with Defendant and finds that a surreply is not warranted. Pursuant to Local Rule 105.2(a), the Court will deny Price's Motion for Leave to File a Surreply.

accommodations "may have been offered" in the past to a qualified employee does not mean that they must be extended in every instance. *Id.* at 284.

To overcome summary judgment on an ADA failure-to-accommodate claim, a plaintiff must "present evidence from which a jury may infer that the [proposed] accommodation is 'reasonable on its face, i.e., ordinarily or in the run of cases.'" *Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015) (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012)). "The plaintiff bears the burden of identifying an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F. App'x 472, 481 (4th Cir. 2010). "A reasonable accommodation is one that is feasible or plausible." *Reyazuddin*, 789 F.3d at 414 (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002)). The ADA does not "require an employer to . . . 'hire an additional person to perform an essential function of a disabled employee's position[.]'" *Shin*, 369 F. App'x at 482 (quoting *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997)). And "an accommodation is not reasonable if it does not 'enable[ ] the employee to perform the essential functions of the job.'" *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 635 (4th Cir.), *cert. denied*, 144 S. Ct. 379 (2023)).

"Not every job-related request by a disabled employee that is denied by her employer will subject the employer to liability for failure to provide a reasonable accommodation." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015). To establish liability for denying a requested accommodation, the accommodation must be "*necessary* in order for [the employee] to perform the essential functions of [his] job." *Id.* (quoting *Gaines v. Runyon,* 107 F.3d 1171, 1175 (6th Cir. 1997)); *accord Buckmaster v. Nat'l R.R. Passenger Corp.*, Civ. No. RDB-19-3203, 2022 WL

9

1081947, at *10 (D. Md. Apr. 11, 2022) (quoting *Fierce*, 101 F. Supp. 3d at 550); *Kande v. Dimensions Health Corp.*, Civ. No. GJH-18-2306, 2020 WL 7054771, at *8 (D. Md. Dec. 2, 2020) (same). *See also Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) ("Reasonable accommodation may take many forms, but it must be effective. . . . All that is required is effectiveness.") (citations omitted); *Black v. Wayne Ctr.*, 225 F.3d 658 (6th Cir. 2000) (table) ("[W]e think that where plaintiff is able to perform the job without accommodation, plaintiff cannot demonstrate the objective reasonableness of any desired accommodation."); *Burnett v. Ocean Properties, Ltd.*, 327 F. Supp. 3d 198, 239 (D. Me. 2018) ("Many cases teach that all requests are not "reasonable" or are not "accommodations" within the meaning of the ADA when they are not needed, given the other circumstances and the other accommodations the employer has provided.") (citations omitted).

Here, there is no genuine dispute that Plaintiff was able to perform the essential functions of his position as a teacher without an aide or assignment to a stationary classroom. During an ADA Interactive Process meeting conducted by the HCPS on November 5, 2019, Plaintiff "acknowledged that he was able to perform all of the essential functions of his job as Teacher," although his medical providers recommended certain accommodations that did not include, at that time, assignment of an aide or restriction to a single classroom. ECF 66-3, ¶ 6. Plaintiff's ability to perform his essential functions without an aide or restriction to a stationary classroom is confirmed by written discovery responses. When asked to "[i]dentify which essential functions of the job of a high school teacher [he was] unable to perform as a result of the Board of Education's alleged failure to provide [him] with reasonable accommodations[,]" Plaintiff answered, in part, as follows: "Accommodations were necessary in order to have equal benefits and privileges of employment. The benefits and privileges have nothing to do with essential functions of the job."

10

ECF 66-2 at 2. Thus, there is no genuine dispute as to Plaintiff's ability to perform the essential functions of his employment without the accommodations he claims he was unlawfully denied. Because the accommodations were not necessary for the performance of Plaintiff's essential functions, he cannot obtain relief from the Board's failure to provide them. *See Fierce*, 101 F. Supp. 3d at 550; *Kande*, 2020 WL 7054771, at *8; *Buckmaster*, 2022 WL 1081947, at *10.

Furthermore, Plaintiff fails to make any showing that the accommodations he sought were feasible or reasonable on their face. Upon suffering his quad injury, Plaintiff requested a student aide on or about November 15, 2019. ECF 66-13, ¶ 5; ECF 33, ¶ 61. The student aide position is a voluntary position. ECF 66-13, ¶ 8. To become a student aide, a student must be a consenting senior possessing the necessary credits to graduate and must set aside time in their schedule. *Id*. ¶ 8. Although HCPS attempted to find Plaintiff an aide, they were unable to do so. *Id*. ¶ 7. By the time Plaintiff requested an aide in November, the semester was almost over, and Plaintiff's restrictions were set to end on January 5, 2020. *Id*. ¶ 14. However, after the Board learned that Plaintiff's physician extended the period of his restrictions, they again attempted to find him an aide, to no avail. *Id*. Lacking any available volunteer student aide, the school was not required to hire another employee to serve as Plaintiff's aide. *See Shin*, 369 F. App'x at 482. Moreover, as explained above, Plaintiff was able to perform his essential functions without this accommodation.

Plaintiff was assigned to teach multiple classrooms throughout the day as a teacher on "float" duty. *Id*. ¶ 18. Plaintiff alleges in Paragraph 58 his Amended Complaint that he asked a vice principal if he could remain in one classroom, Principal Josh Wasilewski states in his affidavit that neither Plaintiff nor anyone else ever advised Wasilewski that Plaintiff needed to change classroom assignments or that he was having trouble moving from room to room. *Id*. ¶ 18. Plaintiff provides no evidence to the contrary. Further, no reports were ever made of Plaintiff being late to

11

any of his classes. *Id*. Wasilewski also notes that giving Plaintiff this accommodation would have been "very difficult to do" and would have created a "substantial disruption" to the schedules of numerous other students and teachers that had already been set. *Id*. ¶¶ 19–20. Rescheduling Plaintiff's classes as necessary to allow him to stay in one classroom would have moved another teacher out of their room with their students. *Id*. ¶ 19. A rescheduling of this nature would have impacted 75 to 90 students, who would have been required to change classrooms for the duration of Plaintiff's accommodation. *Id*. Again, Plaintiff provides no contrary evidence that this significant shift in scheduling would be reasonable or even feasible. Thus, there is no genuine dispute that assigning Plaintiff a stationary classroom at the time he requested one would not be a reasonable accommodation under the ADA. *See Reyazuddin*, 789 F.3d at 414.

In sum, Plaintiff fails to establish a prima facie case of failure to accommodate under the ADA, and the Board is entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motions for leave to amend, leave to file a surreply, and to strike defense affidavits will be denied, and Defendant's motion for summary judgment will be granted.

A separate Order will follow.

DATE: 3/31/25

_____
Matthew J. Maddox
United States District Judge